IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CHARLES NANCE                                                          PLAINTIFF

v.                                                          No. 1:19CV210-SA-RP

CITY OF WEST POINT, ET AL.                                            DEFENDANTS

MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Charles Nance, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants targeted him for harassment because of his race by arresting him and searching his person and his residence without probable cause.

The defendants have filed separate motions [78], [83] for summary judgment, arguing, *inter alia*, that some claims are barred by the applicable statute of limitations; some are barred by qualified immunity, and that all claims fail on the merits. Mr. Nance has responded to the motions, and all parties have submitted supplemental briefing. The matter is ripe for resolution. For the reasons set forth below, the motions by the defendants for summary judgment will be granted, and judgment will be entered for the defendants in all respects.

*Summary Judgment Standard*

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those

made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings. Rather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id*. The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356, "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."

*Facts Regarding Defendant Deputy Terry Scott*

Mr. Nance's claims arise out of various encounters with the Clay County Sheriff's Department and West Point Police Department. More specifically, he alleges claims against Deputy Scott for allegedly entering Nance's mother's home while then-girlfriend, Leigh Ann Hall, collected her belongings to leave. Additionally, Mr. Nance alleges claims against Deputy Scott for telling his officers to conduct a "warrantless raid" on his mother's home.

- 3 -

On September 30, 2016, Leigh Ann Hall ("Hall") attempted to cash a check at Frank's Package Store. *CLT-(NANCE)*-000566-573; *Charles Nance Depo.*, p. 47:2-25. She had allegedly sold a weed trimmer to someone online and received a check for it in the mail. Hall and Nance went to the package store to try to cash the check. *Charles Nance Depo.*, pp. 43:10-25-44:1, 45:9-23. Frank Potera, the owner of the store, called the Clay County Sheriff's Department when he realized the check was fraudulent. *Id*; *CLT-(NANCE)*-000566-573. Deputy Scott came to the store to investigate the matter and requested that Mr. Nance bring Hall to the Sheriff's Department. *Id*. Nance agreed and, that very day, brought Hall to the Sheriff's Department. *Id*. Deputy Scott mirandized Hall and questioned her about the alleged fraudulent checks. *CLT-(NANCE)*-000568-569. Hall told him that she was staying at Mr. Nance's residence[1] and told him that she received the check in the mail. *Charles Nance Depo.*, pp. 10:14-19, 26:16-25-27:1-4. *CLT-(NANCE)*-000567-568. During the questioning, Hall informed Deputy Scott that Nance was abusing her, and Deputy Scott noted bruises on her body. *Deputy Scott. Aff.*, ¶ 6.

Once the questioning concluded, Deputy Scott asked Hall if she wanted him to take her to her mother's house in Amory, Mississippi. *Id*. Hall agreed and asked Deputy Scott to go with her to retrieve her clothes at the residence on Sixth Street she shared with Nance. *Id*. Deputy Scott transported Hall to the residence and Hall asked Deputy Scott to come inside while she gathered her belongings. *Id*; *Charles Nance Depo.*, p. 44:11-14. Deputy Scott and allegedly Ramirez Williams went into the residence with Hall to get her clothes. *Charles Nance Depo.*, p. 49:2-9, 12-17. According to Nance, this was done without permission; however, he concedes that he was not present when Hall spoke with the deputies about getting her belongings. *Id*. at 51:15-23. Deputy Scott then took Hall to her mother's

---

[1] Hall had Nance's residence listed on her driver's license. *Charles Nance Depo.*, 26:16-25-27:1-4.

home in Amory, Mississippi. *Deputy Scott Aff*., ¶ 6. On October 5, 2016, an arrest warrant was issued for Hall. *CLT-(NANCE)*-000572. Deputy Scott informed Clay County deputies in the patrol division that a warrant had been issued for Hall's arrest, however he had no further involvement with the matter. *Deputy Scott Aff*., ¶¶ 7-9; *OHT*, p. 7:6-16.

Clay County deputies in the patrol division went to Hall's last known listed residence on Sixth Street to serve the arrest warrant on Hall, however, she was not at the residence. *Id*. According to Nance, deputies allegedly barged into his home to look for Hall without his permission or a warrant. *OHT*, p. 7:6-16. Mr. Nance states that one of the deputies known as "pointy nose" told him that Deputy Scott dispatched them to Nance's home; however "pointy nose" (or Dep. Jeremy Dubois) was not present at the scene. *Jeremy Dubois Aff; Charles Nance Depo*., pp. 53-54.

### Plaintiff's Allegations Regarding Defendant Officer Kyle Eaves[2]

In his Complaint, Nance alleges that one night, while he and Hall were sleeping, he was woken by Eaves knocking on his bedroom door. Doc. #2, ¶16. Eaves must have broken in, Nance believes, because no one let him in the house. *Id*. Eaves put Nance in handcuffs, took him outside, put him in a chair, went in to get Hall, brought her out, left, came back alone, let Nance out of the handcuffs, and then left the premises. *Id*.

According to Nance's *Spears* hearing testimony, it was sometime in 2015 or 2016 at about 2 or 3 a.m. when Officer Eaves walked into the house while everyone was sleeping and knocked on Nance's

---

[2] The plaintiff's recitation of the facts is incomplete and often contradicted by documentation in the record. The defendants' description of events is more complete and well-documented, but some of those facts are nonetheless disputed by the plaintiff's sworn declarations. However, as discussed below, the dispositive facts in this case are not in dispute: The dates of the searches, Ms. Hall's consent to search the premises on September 30, 2016, and defendant Scott's lack of participation in the October 5, 2016, "raid" of Clara Nance's home.

bedroom door. Exh. H at 10, 12. Thinking that the knock must have been one of his nephews, Nance opened the door to find Officer Eaves. *Id*. at 10. Nance claims that Eaves had no warrant and only stated that there was a report from a neighbor "that something was going on." *Id*. at 11. Eaves handcuffed Nance and made him stand outside while he woke Hall and forced her to leave. *Id*. at 11. After Eaves "took her away," he uncuffed Nance and told him that he was free to go back into the house. *Id*.

During his deposition, Nance added some detail. He recalled the incident occurring at 1:30 a.m. Exh. I at 10. Eaves entered the home with guns drawn while everyone was asleep and, after waking Nance, explained that someone from another town had called 911. *Id*. Eaves placed Nance in restraints and sat him in a chair outside, then woke Hall and called an ambulance to transport her to the emergency room. *Id*. at 11. Hall was not inebriated, however, nor did she appear so – she had just been asleep. *Id*. at 14. Although she had fallen off a hoverboard earlier, she was not injured, and she did not appear injured. *Id*. Eaves came back alone after Hall was sent to the ambulance, and he unhandcuffed Nance and told him that he was free to go inside. *Id*. at 11-13.

Although this version of Nance's recollection placed other West Point officers at the scene, he claims that he did not interact with anyone except Eaves. *Id*. at 12-13. He claims that Eaves forced Hall to stay at the emergency room, and while there, encouraged her to make false accusations against him. *Id*. at 11 – 13. The plaintiff maintains that he and Hall had not argued on the day of the incident. *Id*. Nance did not allege a specific date, and at the *Spears* hearing gave a range of dates that allowed for at least the possibility that the claims fell within the statute of limitations.

### Facts Regarding Defendant Officer Kyle Eaves

Mr. Nance omitted many details in his account of the events surrounding his claim against Officer Eaves; however, the defendants have provided details and evidence to support them. The

dispositive detail is that the incident occurred on September 10, 2016, making any claim asserted in the September 25, 2019, complaint time-barred. Three officers' body cameras also give a far more complete picture. See Exhs. B, C, and D. Further, dispatch logs reflect the extent of the information that Officer Eaves had at the time of his arrival. Exh, E.

Nance's recollection, it turns out, is faulty. Videos show that the incident actually occurred around 8 a.m., not in the wee hours of the morning. *Id*.; Exh. E. Three West Point officers responded to a call reporting that a woman was being beaten outside of the residence at 821 Sixth Street. Id. Officer Eaves was the first to arrive, and within minutes Officers Johnson and Ramirez were on the scene. *Id*. Officer Eaves knocked repeatedly while yelling for Nance to come to the door. Nance's mother, Clara Nance, approached and locked it. Exh. B. A few minutes later, Ms. Nance opened the door to speak with the officers. *Id*. Officer Eaves asked whether Hall was inside, and when Ms. Nance responded that she was uncertain, he asked if they could check. *Id*.

Eaves explained that there had been a report that Hall was the victim of violence, and Ms. Nance voluntarily allowed the officers inside and consented to their presence in her home. *Id*.; Exh. J. She led them down the hall and answered their questions. *Id*. Officer Eaves spoke to Jamarcus, Nance's nephew, regarding the reported domestic violence victim's whereabouts. Exh. B. Continuing his effort to locate and render aid to a domestic violence victim, Eaves then knocked on Nance's door while commanding that he open it. *Id*. When Nance complied, Eaves instructed him to leave the room with the other officers so that Eaves could render aid to Hall. Officer Eaves did not take custody of Nance; other officers (non-parties in this suit) did. *Id*. Officer Eaves entered the bedroom and attempted to render aid to Hall, who was barely responsive, badly beaten, and bruised. *Id*.; Exh. J.

After care for Hall had been secured, another officer remained in the room with Eaves and photographed cocaine, a needle, and other paraphernalia that were in plain view of the officers. *Id*.

After approximately twelve minutes on the scene, Officer Eaves approached Nance outside for the first time. *Id*. Nance had been handcuffed and guarded by another officer in the interim – not Officer Eaves. Despite the signs of battery and the plain-view drugs and paraphernalia, sufficient probable cause for a number of felony offenses, Officer Eaves explained to Nance that he was only being detained, not arrested at that time. Exh. B. For Hall's protection and the protection of officers, Nance remained in handcuffs until Hall left in the ambulance. *Id*. After attempting to gain a warrant and Nance's consent to search the remainder of the home, the officers ultimately left without charging him. *Id*.; Exh. J.

*Statute of Limitations Bars Claims Arising From*
*the September 10, 2016, Search of Clara Nance's Home*

A federal court borrows the forum state's general or residual personal injury limitations period. *Owens v. Okure*, 488 U.S. 235, 249 (1989); *Gartrell v. Gaylor*, 981 F.2d 254 (5th Cir. 1993). In Mississippi, that statute is Miss. Code Ann. § 15-1-49, which allows a litigant only three years to file such an action, and the statute begins to run "at the moment the plaintiff becomes aware he has suffered an injury or has sufficient information to know he has been injured." *Russel v. Board of Trustees of Firemen, etc.*, 968 F.2d 489 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 1266 (1993) (citations omitted). Under the "mailbox rule," a prisoner's complaint is deemed filed when he delivers it to prison officials for mailing to the district court. *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir.1998) (relying on *Houston v. Lack* and its progeny). In this case, the plaintiff's complaint was "filed" sometime between the date he signed it (September 25, 2019) and the date the State Court received it (October 2, 2019). The court will give the plaintiff the benefit of the doubt and operate on the assumption that he presented the complaint to prison officials on the date he signed it – September 25, 2019. Thus, any claims in this case which arose before September 25, 2016, are barred by Mississippi's three-year limitations period.

- 8 -

As such, Mr. Nance's claims against Officer Kyle Eaves regarding the September 10, 2016, search of Clara Nance's home must be dismissed; these events took place outside the three-year limitations period.

*Failure to State a Claim Regarding the September 30, 2016,*
*Search of Clara Nance's Home*

Mr. Nance alleges that Deputy Scott entered his mother's home without a warrant or consent. More specifically, as shown by the records, Hall attempted to cash a fraudulent check on September 30, 2016 and, on that same day, was brought by Deputy Scott to retrieve her clothes from her shared residence with Nance on Sixth Street. *CLT-(NANCE)*-000566-573; *Charles Nance Depo.*, p. 47:2-25. Deputy Scott allegedly entered the home without a warrant or Nance's consent. Deputy Scott did not, however, require Mr. Nance's permission to enter the premises, as Ms. Hall – a resident of the home – gave *her* permission by requesting that Deputy Scott accompany her as she gathered her belongings. *Deputy Scott Aff.*, ¶ 6; *Charles Nance Depo.*, 49:1-6.

A warrantless search is valid with the voluntary consent of a third party possessing authority. *See, Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S. Ct. 2793, 2797, 111 L. Ed. 2d 148 (1990); *United States v. Matlock, supra*, 415 U.S., at 171, 94 S.Ct., at 993. "Common authority" rests "on mutual use of the property by persons generally having joint access or control for most purposes...." *Matlock*, at 171. The facts of this case make clear that Ms. Hall had the authority to consent to entry into the home. She resided there, as evidenced by her driver's license; her belongings were located in the home, and Mr. Nance concedes that she lived there at the time.

Certainly, Ms. Hall voluntarily gave her consent. To determine whether consent is voluntarily given, the Court must examine a number of factors, including:

- 9 -

> 1) the voluntariness of the [person's] custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the [person's] cooperation with the police; 4) the [person's] awareness of his right to refuse consent; 5) the [person's] education and intelligence; and 6) the [person's] belief that no incriminating evidence will be found.

*United States v. Hernandez*, 279 F.3d 302, 307 (5th Cir. 2002)(citing *United States v. Jones*, 234 F.3d 234, 242 (5th Cir. 2000)). Though Mr. Nance makes the bare allegation that she did not give consent, he was not there and produced no evidence whatsoever to the contrary. Indeed, When Deputy Scott and Ms. Hall came to the residence on Sixth Street immediately after questioning, Mr. Nance acknowledges that he was inside the home and could not hear any conversation between Deputy Scott and Ms. Hall. *Charles Nance Depo.,* p. 51:9-23.

Ms. Hall requested during the questioning that Deputy Scott come with her to retrieve her clothes from the residence on Sixth Street because she said Nance was abusing her, and she was afraid. *Deputy Scott Aff.*, ¶ 6. Indeed, Mr. Nance admits that Hall made this request, stating that Deputy Scott "came in the house with [Hall] to help her get her clothes." *Charles Nance Depo*., 49:1-6. Deputy Scott did not search the home for evidence; instead, he waited for Hall to recover her clothes, then left the premises. *Deputy Scott Aff.*, ¶ 6.

Based on the totality of the circumstances, Deputy Scott came to the property and entered the home at Ms. Hall's behest. In addition, Mr. Nance has alleged no harm from the entry into the home, as he was not charged with a crime arising out of Deputy Scott's visit. As Hall gave Deputy Scott consent to enter the residence to come with her to retrieve her clothes, and, as Mr. Nance has not alleged any harm from Deputy Scott's actions, Mr. Nance has not stated a claim for a Fourth Amendment violation based upon the September 30, 2016, entry into Clara Nance's home.

*Supervisor Liability* Regarding the October 5, 2016,
"Raid" of Clara Nance's Home

The plaintiff's claims against Deputy Terry Scott for ordering the October 5, 2016, "raid" of

Clara Nance's home must also be dismissed, as Deputy Scott participated in the events, at most, as a supervisor. The plaintiff alleges that Deputy Scott "ordered" the raid. As discussed below, this claim is insufficient to establish a claim against Scott arising out of the "raid."

A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). A § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007).

There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, or (2) when he implements an unconstitutional policy that results in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for failure to supervise his subordinates – even when he is present on the scene – because, after *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

In this case, the plaintiff does not allege that Deputy Scott had any personal involvement or was causally connected to the incident in any way. He informed fellow officers about the search warrant and was not present during the search. As such, this claim will be dismissed for failure to state a constitutional question.

- 11 -

*Conclusion*

For the reasons set forth above: (1) The plaintiff's allegations against defendant Officer Eaves for the September 10, 2016, warrantless entry into Clara Nance's home must be dismissed as untimely filed; (2) The plaintiff's allegations against Deputy Scott arising out of the September 30, 2016, warrantless entry into Clara Nance's home must be dismissed, as Deputy Scott entered with the consent of a resident of that home, Leigh Ann Hall; and (3) The plaintiff's allegations against Deputy Scott arising out of the October 5, 2016, "warrantless raid" of Clara Nance's home must be dismissed, as defendant Scott participated in the event, at most, as a supervisor. In sum, the court will grant the defendants' motions [78], [83] for summary judgment, and judgment will be entered for the defendants. A final judgment consistent with this memorandum opinion will issue today.

SO ORDERED, this, the 4th day of May, 2021.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE